**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1439**

JONATHAN MCCRAY,

Plaintiff - Appellant,

and

RAY E. GARDNER,

Plaintiff,

versus

PEE DEE REGIONAL TRANSPORTATION AUTHORITY;
GEORGE SIMMONS; ELAINE BARKLEY; EDWARD
ROBINSON; ANDY IMGRAM; BILL BOYD; THEODORE
BURNS; JAMES B. KNIGHT; LARRY FOSTER; STEVEN
RAST; ALPHONSO CAMPBELL; HAROLD KORNBLUT;
NANCY FINKLEA, in their official capacities as
Board Members and individually; BEN KNIGHT, As
Executive Director,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Florence.  Terry L. Wooten, District Judge.
(4:04-cv-01948-TLW)

Argued: December 7, 2007          Decided: February 6, 2008

Before WILLIAMS, Chief Judge, and MOTZ and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Chalmers Carey Johnson, Mt. Pleasant, South Carolina, for Appellant. Robert Thomas King, WILLCOX, BUYCK & WILLIAMS, P.A., Florence, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jonathan McCray, an African-American man, appeals from the district court's grant of summary judgment in favor of the Pee Dee Regional Transportation Authority ("PDRTA") and certain members of its Board of Directors (collectively, "Appellees") on his civil rights claims.[1]  McCray seeks relief pursuant to 42 U.S.C.A. §§ 1981 and 1983 (West 2003 & Supp. 2006), claiming that the PDRTA terminated his employment on the basis of his race and that Appellees violated his rights under the Equal Protection Clause.[2] For the following reasons, we affirm the district court's grant of summary judgment to Appellees.

I.

Because the district court granted summary judgment in favor of Appellees, we construe the facts in the light most favorable to McCray, the non-moving party.  Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).  The PDRTA Board of Directors elected McCray as Executive Director in 1994, in a vote that split

_____

[1]McCray was joined in his complaint by co-plaintiff Ray E. Gardner, a former Chairman of the PDRTA Board of Directors; Gardner, however, has not pursued an appeal in this case.

[2]McCray's complaint also alleges that Appellees violated his First Amendment rights, but McCray's opening brief does not address the district court's dismissal of his First Amendment claim against Appellees.  He has therefore waived appellate review of that claim. In re Apex Express Corp., 190 F.3d 624, 630 n.5 (4th Cir. 1999) (noting that issues not argued in appellant's brief are deemed waived on appeal).

8 to 7 along racial lines. McCray contends that, after his election, Steve Rast, a Caucasian man, joined the Board and "began to work for the return of white control of the PDRTA, and the termination of [] McCray as its Executive Director." (J.A. at 16.) McCray claims that Rast, along with two other Caucasian Board members, Elaine Barkley and Andy Ingram, attempted to undermine McCray's position with the PDRTA through allegations of mismanagement and wrongdoing. McCray further contends that Board member Edward Robinson, who is African-American, became aligned with McCray's opponents due to disagreements between Robinson and McCray over the use of PDRTA buses.

During a meeting on June 21, 2001, after the Board removed Ray Gardner, a Caucasian man, from his position as Chairman of the Board and forced Gardner to leave the Board meeting, the members were able to garner enough votes to terminate McCray. On July 13, 2001, a majority of the Board called another meeting to vote on the possible reinstatement of McCray and Gardner. The meeting was scheduled for July 16, 2001, but before McCray could attend, he was arrested based on a warrant sworn out by Robinson. According to McCray, while under arrest he was unable to "organize and rally his supporters," (J.A. at 17), and Appellees later succeeded in cancelling the scheduled meeting by preventing a quorum of the members from attending.

- 4 -

We review de novo a district court's order granting summary judgment, drawing reasonable inferences in the light most favorable to the non-moving party. Henson, 61 F.3d at 274. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Credibility determinations are improper on summary judgment; where resolution of an issue of fact depends upon such a determination, summary judgment is inappropriate. Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991).

The district court held that McCray's federal suit was barred by res judicata principles because McCray had filed an earlier civil lawsuit in South Carolina state court that was dismissed in Appellees' favor. The doctrine of res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by parties or their privies based on the same cause of action. Meekins v. United Transp. Union, 946 F.2d 1054, 1057-58 (4th Cir. 1991); Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990). It extends to those claims that "existed at the time of the [prior] suit and might have been offered in the same cause of action. . . ." Aliff, 914 F.2d at 43-44 (internal quotation marks

and citation omitted).  For the doctrine of res judicata to apply,

"'there must be: (1) a final judgment on the merits in a prior

suit; (2) an identity of the cause of action in both the earlier

and the later suit; and (3) an identity of parties or their privies

in the two suits.'"  Martin v. Am. Bancorporation Ret. Plan, 407

F.3d 643, 650 (4th Cir. 2005) (quoting Pueschel v. United States,

369 F.3d 345, 354-55 (4th Cir. 2004)).

In the prior state action on which the district court based

its application of res judicata principles, McCray asserted claims

of malicious prosecution, defamation, and civil conspiracy against

a number of PDRTA Board members and the PDRTA.  These claims arose

from McCray's arrest in July 2001, which stemmed from his use of a

PDRTA credit card to pay for a hotel room on the night that he was

terminated by the Board.[3]  McCray filed his state action in late

2001, and in July 2003, the state court held two hearings on the

defendants' motion to dismiss and motion for summary judgment.  The

state court granted the motion to dismiss, holding that service of

---

[3]McCray claimed that it was customary for him to rent a hotel room following board meetings, as he lived quite a distance from the meetings and would stay at a hotel to make it easier for him to arrive at work the next morning.  However, when members of the Board discovered this particular charge, some believed it to be unauthorized and contacted the local sheriff's office.  One of the Board members, Robinson, later signed an arrest warrant accusing McCray of obtaining goods by false pretenses.  When McCray arrived for the July 16, 2001, meeting regarding his possible reinstatement, he was placed under arrest in front of members of the local media.  In August 2001, the charges were dismissed because Robinson, the prosecuting witness, had not suffered any loss.

process was insufficient and that the court lacked personal jurisdiction over the defendants. The court added that even if the defendants had been properly served, they would still be entitled to summary judgment, as McCray had failed to come forward with sufficient evidence to support his claims.

McCray contends that the district court erred in concluding that this state-court decision was "final and on the merits." (J.A. at 1428.) We agree. Under Rule 41(b) of both the Federal and South Carolina Rules of Civil Procedure, a dismissal for lack of personal jurisdiction does not operate as an adjudication on the merits. Fed. R. Civ. P. 41(b); S.C. R. Civ. P. 41(b). Because the state court dismissed McCray's previous case for lack of personal jurisdiction over the defendants, its ruling was not on the merits of the case. Moreover, when a case is dismissed on alternative grounds, one procedural and one substantive, that ruling has no res judicata effect as to substantially identical claims. Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 119 (4th Cir. 1989). Therefore, the state-court decision cannot have preclusive effect with respect to the federal claims in this case.

Hoping to avoid this conclusion, Appellees contend that our decision in Stebbins v. Nationwide Mut. Ins. Co., 528 F.2d 934 (4th Cir. 1975) (per curiam), permitted the district court to give preclusive effect to the procedural dismissal of the prior lawsuit. In Stebbins, although we noted that res judicata traditionally

applies only to those cases that have been fully litigated on their merits, we made use of an exception to the traditional res judicata rule that bars a plaintiff from litigating his claims if "the circumstances are such that it would be manifestly unfair to subject the defendant to such an action." Stebbins, 528 F.2d at 937 (internal quotation marks and citation omitted). Id. at 937. Stebbins involved a serial litigant who had made a "career" out of suing insurance companies and had previously exhibited an "intentional, wilful, and contemptuous disregard of both Court and statutory rules and requirements." Id. at 937 n.4 (citing Stebbins v. Nationwide Mut. Ins. Co., 469 F.2d 268, 270 (4th Cir. 1972)). The "unfairness" to Nationwide from a new trial was "substantial and manifest," given that Nationwide had been prepared to litigate the merits of the first suit and had in fact participated in a "full-blown trial" as to the substance of the plaintiff's claims. Id. at 938. Because the first action had been dismissed due to the plaintiff's "intentional disregard of the statutory precondition," we held that Nationwide should not be burdened with a second trial. Id.

Although Appellees claim that the rationale in Stebbins is applicable to McCray's current lawsuit, we find that the factors that compelled the result in Stebbins are not applicable here. In the present case, Appellees claim that they were prejudiced as a result of the nearly two years of litigation that resulted from

- 8 -

McCray's first lawsuit, and they assert that McCray should be held accountable for "fully litigat[ing] the claims without curing the service defect." (Appellee's Br. at 14.) There is, however, no indication in the record that McCray's failure to effect proper service of process was the result of an "intentional disregard of the statutory precondition." Stebbins, 528 F.2d at 938. Additionally, while the state court held two separate hearings, those hearings were dedicated to resolving the motion to dismiss and motion for summary judgment, as well as "related matters." Although the state court made a series of findings in granting the defendants' motion for summary judgment, it is clear that, in contrast to Stebbins, McCray's claims were never subject to an actual trial on the merits.

In sum, we conclude that the state-court judgment did not constitute a final judgment on the merits for res judicata purposes, and Appellees have not demonstrated that it would be manifestly unfair to subject them to a trial on the merits. We therefore hold that res judicata principles do not bar McCray from pursuing his present action.


III.

The district court made an alternative finding that, even if McCray's claims were not barred by principles of res judicata, they

would still fail on the merits.  In this regard, we agree with the district court.[4]

McCray's complaint listed, <u>inter alia</u>, a claim for discrimination under 42 U.S.C.A. § 1981 and a § 1983 claim pursuant to the Equal Protection Clause of the Fourteenth Amendment.  The elements of a claim under § 1981 or § 1983 mirror those of Title VII: A plaintiff must provide direct evidence of discriminatory treatment or proceed under the framework set forth in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to establish a prima facie case.  <u>See</u> <u>Gairola v. Va. Dep't of Gen. Servs.</u>, 753 F.2d 1281, 1285-86 (4th Cir. 1985).  If a plaintiff has presented "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision," he is under no obligation to make out a prima facie case.  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 318 & n.4 (4th Cir. 2005).  In establishing evidence of discrimination, derogatory remarks may constitute direct evidence, as long as the remarks were related to the employment decision in question and were not stray or isolated. <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 608 (4th Cir. 1999), <u>abrogated on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>,

---

[4]We note that because "we review judgments, not opinions," <u>Catawba Indian Tribe of South Carolina v. City of Rock Hill</u>, 501 F.3d 368, 372 (4th Cir. 2007) (per curiam), we may affirm the district court on any ground supported by the record.

539 U.S. 90 (2003). McCray's evidence must clearly indicate a discriminatory motive and illustrate a nexus between that motive and the adverse employment action. Id.

The district court concluded that (1) there was no direct evidence of discrimination and (2) that McCray had not made out a prima facie case under the McDonnell-Douglas framework. We address these conclusions in turn.

A.

In this case, the district court determined that McCray failed to produce direct evidence that his termination was due to discrimination. In reaching this conclusion, the court focused on two statements proffered by McCray in support of his case: one from McCray's own affidavit and another from an affidavit submitted by Benjy Rogers, a Caucasian man who served on the PDRTA Board from 1989 until 2004. In McCray's affidavit, he recalled a terse phone conversation that he had with Rast in January 1999, during which Rast, apparently believing that McCray had hung up on him, allegedly stated, "I can't stand that black son of a b--ch." (J.A. at 1225.) In Rogers' affidavit, Rogers recounted a discussion that he had with Barkley regarding why McCray was being scrutinized and criticized far more than his predecessor, during which Barkley "accosted" Rogers, who is Caucasian, and said that "[t]he only difference between you and that black S.O.B. is you're white and he is black. The first chance we get we are going to run his ass out

- 11 -

of town, no matter how good you think he is." (J.A. at 1151.) There is no indication in the record as to when this conversation took place. In evaluating this evidence, the district court concluded that these statements did not constitute direct evidence and that even if they were evaluated as direct evidence, the court's decision would be the same.[5]

While isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-12 (4th Cir. 1994) (statement made over two years before discharge was too remote in time to serve as evidence of age discrimination); see also Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 491 (7th Cir. 2007) (particular remark can provide inference of discrimination if made around the time of adverse decision); Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999) (isolated comment can constitute direct evidence if

_____

[5]On appeal, McCray identifies more than a dozen alleged statements that he contends are direct evidence of discrimination. Many of these statements, however, are not substantiated by the affidavits and deposition testimony submitted by McCray and Gardner: some of the statements cannot be relied on because they are inconsistent with the evidence on record; and some of the alleged remarks are simply not direct evidence of discrimination. Finally, a large number of the statements put forth by McCray are based upon inadmissible hearsay, as McCray relies entirely on information relayed to him by third parties who are not party-opponents and who have not themselves provided affidavits or deposition testimony. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (summary judgment affidavits cannot be conclusory or based on hearsay).

contemporaneous with the discharge or causally related to discharge decision-making process). In this case, McCray has failed to demonstrate that either of the alleged statements were reasonably contemporaneous with the Board's decision to terminate his employment. Therefore, we find that the district court did not err in holding that McCray failed to provide sufficient direct evidence to raise a genuine issue of material fact as to whether the Board's decision to terminate him was based upon his race.

B.

While McCray has failed to provide sufficient direct evidence to support his claims, he may also avoid summary judgment by proceeding under the McDonnell-Douglas framework. To demonstrate a prima facie case of discrimination, a plaintiff must show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing his job duties at a level that met his employer's legitimate expectations; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). If a prima facie case is established, the burden then shifts to the employer to provide a legitimate reason for the adverse employment action. Id. If the employer meets its burden of production, the presumption of discrimination drops from the

case and the plaintiff once again bears the burden to prove that he was the victim of discrimination. Id.

In this case, the district court held that McCray failed to demonstrate that he was performing his job at a level that met his employer's expectations. The district court listed several problems with McCray's performance, including his obtaining loans and lines of credit without the Board's authorization, negative reviews by the Federal Transit Administration that uncovered nearly $900,000 in federal funds that the PDRTA had to return, and a number of other issues relating to McCray's contributions to the PDRTA's financial instability. Although it was "not prepared to conclude that all [the] problems of the PDRTA were the fault of plaintiff McCray," (J.A. at 1435), the district court concluded that the evidence was sufficient to demonstrate that McCray was fired because of his job performance and not because of his race.

McCray makes a series of allegations in an attempt to defend his performance, but he has presented no substantive evidence demonstrating that he was performing his job at a level that met his employer's legitimate expectations. Appellees submitted numerous audits and documents establishing that the PDRTA suffered from severe financial problems, and as the district court noted, while McCray may not deserve all of the blame for the PDRTA's extensive fiscal shortcomings, he has clearly failed to demonstrate

that his performance as Executive Director was satisfactory.[6] Therefore, based on the reasoning provided by the district court, we find that McCray has failed to establish a prima facie case of discrimination.[7]

IV.

For the foregoing reasons, the district court's dismissal of McCray's discrimination claims is

AFFIRMED.

---

[6]McCray repeatedly asserts that Appellees relied on post hoc reasoning that was fabricated after his termination, and that their proffered reasons for his termination were mere pretext for their racially motivated actions. McCray relies on an excerpt from Barkley's deposition transcript that he asserts proves that the Board had no legitimate reason to fire him. At her deposition, Barkley was asked about a comment she made to Ben Knight, the new Executive Director, at a 2002 Board meeting, in which she wanted him to "dig" for information on McCray. (J.A. at 240.) McCray claims that Barkley's response proves that she was completely unaware of any malfeasance on his part at the time she voted to fire him. The questions asked during this portion of the deposition, however, are somewhat vague and indirect, as Barkley's answers indicate that she merely wanted further investigation into whether McCray was engaged in additional malfeasance of which she or the Board was still unaware. In any event, Barkley's isolated comments regarding efforts to "dig" up information on McCray are not inconsistent with any prior statements and do not provide sufficient evidence of a pretextual reasoning for McCray's termination.

[7]McCray also alleges that Appellees were guilty of abuse of process. We have considered this argument and find it to be without merit.

- 15 -