**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2530**

RALPH WILFRED ARTHUR,

Plaintiff – Appellant,

v.

PET DAIRY; LAND-O-SUN DAIRIES, LLC,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:11-cv-00042-NKM-RSB)

Argued: December 9, 2014          Decided: February 9, 2015

Before WILKINSON, SHEDD, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Terry Neill Grimes, TERRY N. GRIMES, ESQ., P.C., Roanoke, Virginia, for Appellant. Victor O'Neil Cardwell, WOODS ROGERS PLC, Roanoke, Virginia, for Appellees. **ON BRIEF**: Frank K. Friedman, J. Benjamin Rottenborn, WOODS ROGERS PLC, Roanoke, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ralph Arthur ("Appellant") sued his employer, Pet Dairy ("Appellee"), alleging that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). He appeals from the district court's order of summary judgment in his employer's favor.

To lodge a claim of age discrimination, a plaintiff may proceed through either of two avenues of proof: by raising a presumption of discrimination, or by offering direct or circumstantial evidence of the employer's discriminatory animus. Regardless of the method employed, the burden remains the same: plaintiff must prove that age was the but-for cause of his termination. In this case, Appellant's evidence fails to raise a genuine dispute as to whether he can satisfy this burden; he offers nothing to cast doubt upon Appellee's stated reasons for terminating him, including numerous customer complaints and his lengthy history of performance issues. Accordingly, we affirm.

I.

A.

Appellant was a milk delivery driver and salesman for Appellee, a corporation serving Lynchburg, Virginia's dairy needs. Appellant initially worked for Pet Dairy in 1992 or 1993 for about six months, and was most recently rehired in January 2003 when he was 57 years old. Appellant was assigned Pet

2

Dairy's largest and most profitable sales route, which supplied Barnes & Noble and the Lynchburg City School Division (the "School Division"), among others.

At the time of his termination, Appellant's direct supervisor was Appellee's branch manager for the Lynchburg office, Mike Reynolds ("Reynolds"). Appellant testified in deposition that on Reynolds's first day as Appellant's supervisor, Reynolds told Appellant, "[Y]ou are too old to be here and I'm going to get rid of you." J.A. 363.[1] Appellant also offered the sworn affidavit of his coworker, Judith Hickman, who generally confirmed that "Reynolds told Arthur that he was too old to be working." Id. at 537. Appellant further testified that around Thanksgiving in November 2009, about three weeks before Appellant's termination, Reynolds told Appellant that he "need[ed] to go ahead and hang it up because [he was] just too old to do [his] job." Id. at 983-84.

But the record also shows Appellant demonstrated significant work performance issues, beginning almost immediately after he was hired in 2003. For example, on May 16th, 2003, Appellant crashed his milk truck into an SUV, striking it hard enough to send the SUV into a triple barrel

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

roll.[2] For this, Appellant was given a written warning. He was also issued two formal, written reprimands in September 2003 for consistently failing to supply customers with adequate quantities of milk.

Appellee hired Mike Reynolds in 2005. Reynolds often communicated his dissatisfaction with Appellant's performance, threatening to fire him either verbally or in writing about once every two weeks. Appellant claimed Reynolds left him at least 17 sticky-notes threatening termination, but Appellant admitted that none of them concerned his age; all criticized his job performance. In one sticky note, Reynolds threatened to fire Appellant for damaging three truck bumpers by hitting objects with his work truck. In another, Reynolds demanded for the "last time" that Appellant take inventory of his delivery load. J.A. 464-65. Reynolds also verbally reprimanded Appellant when customers complained about his failure to deliver adequate quantities of milk, and threatened to terminate Appellant when he refused to deliver the goods as requested.

Reynolds said that he received more complaints about Appellant than about any of the other drivers, and that Appellant had problems with customers "from day one." J.A. 738.

---

[2] In his deposition, Appellant attempted to understate his blameworthiness for this accident, insisting that he merely "tapped" the other driver's vehicle. J.A. 447.

4

Reynolds said that after he corrected Appellant, Appellant "would get better for three or four months" before reverting to his bad habits. Id. at 739. Reynolds was not alone in his assessment of Appellant. Both he and his assistant manager, Steven Good ("Good"), told Appellant on several occasions that his performance was lacking and he "would end up getting fired because of his problems" if he did not improve. Id. at 738.

Appellant also generated several complaints from Appellee's customers, and from the School Division especially. Appellee disciplined Appellant in writing after a Barnes & Noble store complained that Appellant failed to deliver enough milk. Later, the Barnes & Noble store demanded Appellee assign its account to another driver after Appellant spilled a gallon of milk on the store's carpet. Additionally, the School Division, the largest customer on Appellant's route, repeatedly complained that Appellant left milk on outdoor loading docks, where it would be exposed to weather; delivered to the schools cartons of milk covered in rust; failed to provide the schools with enough milk; argued with school cafeteria managers; sped through school parking lots; maneuvered his hand truck "at breakneck speed" through school kitchens, "to the point it created a safety hazard"; failed to inventory his load of milk; and exhibited a rude and hostile attitude. J.A. 604.

The School Division annually hosted an in-service meeting where school staff would express their opinions on services provided by various contractors. By 2009, the School Division had complained about Appellant for "several years," and it had "exhausted [its] patience." J.A. 1021. Meryl Smith ("Smith"), the director of school nutrition, invited Reynolds to the School Division's August 2009 in-service meeting because she received such a high number of complaints from school cafeteria managers that she "wanted [Reynolds] to hear [these complaints] directly from [the managers]." Id. at 630. Reynolds attended the meeting and heard these complaints in person. This was the first time Smith had requested a representative of any of the School Division's "many" vendors to attend an in-service meeting in order to hear complaints from school staff about an employee's job performance. Id. at 632. But even after this unprecedented in-service meeting, Smith still heard complaints from cafeteria managers and contacted Reynolds "on and off . . . expressing [her] concern that things were not getting better." Id. at 602-03.

In her deposition, Smith said that Reynolds approached her several months after the in-service meeting and asked her to "put [her] concerns [about Appellant] in writing" because Reynolds was considering whether to "get[] rid of [Appellant] as an employee," and needed a written complaint "in order to make

6

changes." J.A. 600, 602, 625. In a memorandum dated December 4, 2009 (the "Smith Memorandum"), Smith documented the School Division's complaints about Appellant. Smith wrote that although she was sure Appellant was "aware that [the School Division was] not happy with his work performance . . . he [did] not make an effort to change those things that he [was] capable of changing," that she had "exhausted [her] patience in working with [Appellant], and [that she] no longer want[ed] to deal with the problems he create[d]" for the School Division's food service program. Id. at 1021. "With this in mind," Smith "stat[ed] that [she] no longer want[ed] [Appellant] to service any of the Lynchburg City School accounts," and she asked Appellee to "assign another route driver to cover the Lynchburg School accounts as soon as possible." Id. Smith penned that she believed the School Division's "long term bid contracts with [Appellee] . . . [gave her] the leverage to make this request." Id. Good testified that when management for Appellee received this memorandum, they believed the School Division "would pull the accounts or the contract if [Appellant] continued to be their service person representing [Appellee]." Id. at 560. The School Division gave Appellee a choice of either removing Appellant from the route or losing one of its most lucrative contracts.

7

On December 8, 2009, Reynolds forwarded the Smith Memorandum to Anthony Heyward ("Heyward") in Appellee's human resources department, stating, "Ralph Arthur needs to be terminated" because he "is an ongoing problem." J.A. 724, 727. Based on Reynolds's recommendation and the Smith Memorandum, Heyward submitted to his superior, Marion Terrell ("Terrell"), that Appellant should be terminated. Heyward did not independently investigate any complaints about Appellant's performance before making this recommendation. Terrell concurred with the recommendation. Appellant was terminated on December 17, 2009.

Appellant testified that Appellee dissolved his route the day after he was terminated. Appellee later divided this route among seven other drivers who then supplied the customers Appellant formerly serviced. Of these drivers, only one was under 40 years old. Appellee did not hire any new employees to replace Appellant.

B.

Appellant filed suit in the Western District of Virginia alleging age discrimination in violation of the ADEA, 29 U.S.C. § 623(a)(1). In addition to offering direct evidence of Reynolds's derogatory statements, Appellant also offered circumstantial evidence that Reynolds intended to discriminate against Appellant because of his age: deposition testimony in

which Reynolds denied procuring the Smith Memorandum, disclaimed any desire to fire Appellant before he received the memorandum, and disavowed having a significant role in the termination. This testimony was directly contradicted by Smith's account of events.

Appellant also claimed he performed his job duties adequately, and he contested the truth of most of the complaints about his work performance, insisting that both the School Division and Reynolds exaggerated or fabricated the basis for their grievances.[3]  Appellant provided uncontested testimony that

[3] Appellant argues we cannot consider many of the School Division's complaints about his performance because they are inadmissible hearsay.  See Appellant's Br. 5-6, 29-36 ("'[I]n assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial.'" (quoting Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008))).  This argument misses the point.  The issue in this case is whether Appellee fired Appellant because complaints were made, not whether the School Division was justified in complaining.  See Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) (upholding order of summary judgment because "uncontested evidence" showed that employer "honestly believed" that employee should be discharged for threatening coworker, because "it is the perception of the decisionmaker which is relevant," not whether employee actually made threats (internal quotation marks omitted)).  Therefore, this evidence is admissible, not for the truth of the statement, but to show Appellee's state of mind.  See Fed. R. Evid. 801(c)(2); see also Arrington v. E.R. Williams, Inc., 490 F. App'x 540, 543 (4th Cir. 2012) ("[T]hird party statements concerning the plaintiff's performance are offered not for the truth of the matters asserted therein, but as an explanation of why [the employer] believed that terminating the plaintiff's employment . . . was necessary and appropriate . . . ." (internal quotation marks omitted)).

despite the complaints, Appellee did not remove him from the top-selling sales route, and did not formally discipline him in writing in the past six years. Reynolds said in his deposition that despite numerous complaints about Appellant's performance, he did not want to fire Appellant until he received the Smith Memorandum.

Appellant also opined that before he was terminated, Reynolds received an email from upper management requiring the Lynchburg branch to increase the sales of three delivery routes, and that "[t]here was no other way [Reynolds] could do that" but to shut down Appellant's route and divide it among the other drivers. J.A. 417. Reynolds testified that a "number of individuals" employed by Appellee or by its parent corporation in Chicago periodically evaluated truck route patterns to determine whether routes could be consolidated or eliminated, in order to save costs. Id. at 681. According to Reynolds, these route "territory planner[s]" decided to eliminated Appellant's route. Id. at 696. Indeed, according to Appellant's testimony, his route was fragmented the day following his termination. But in his deposition, Appellant maintained he did not think business necessity was "the primary reason" Appellee fired him. Id. at 981.

After discovery, Appellee moved the district court for summary judgment. The district court granted the motion. See

10

Arthur v. Pet Dairy, No. 6:11-cv-00042, 2013 WL 6073465 (W.D. Va. Nov. 19, 2013).

II.

A.

We review orders granting summary judgment de novo, viewing the evidence in a light most favorable to the nonmoving party. See Educational Media Co. at Va. Tech, Inc. v. Insley, 731 F.3d 291, 297 (4th Cir. 2013). A party moving for summary judgment must prove that no genuine dispute of material fact exists, and that the moving party must prevail as a matter of law. See Fed. R. Civ. P. 56(a). The nonmoving party may avoid summary judgment by offering sufficient evidence to show the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Evidence raises a genuine dispute if it "is such that a reasonable jury could return a verdict for the nonmoving party," and not "so one-sided that one party must prevail as a matter of law." Id. at 248, 252. Therefore, when judging whether a "genuine" dispute exists, the court must, to some extent, evaluate the evidence as a reasonable juror would. See id. at 248. But we may not "weigh the evidence and determine the truth of the matter," because genuine disputes as to the truth of material facts should be submitted to the jury. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted) (reversing order of

11

summary judgment because "the court improperly weighed the evidence and resolved disputed issues in favor of the moving party" (internal quotation marks omitted)).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to create a genuine dispute]; there must be evidence on which the jury could reasonably find for the plaintiff."  Liberty Lobby, 477 U.S. at 252.

B.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA plaintiff may prove age discrimination in one of two ways: by proving a "prima facie case" of age discrimination, which establishes a rebuttable presumption that the employer violated the ADEA; or by offering direct or circumstantial evidence of an employer's discriminatory animus. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc), abrogated in part by Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009).  Regardless of the method chosen, it remains the plaintiff's ultimate burden to prove that his age was the but-for cause of the adverse

12

employment action. See Gross, 129 S. Ct. at 2351. The district court held Appellant's evidence does not raise a genuine dispute sufficient to meet his burden on either ground. Appellant claims the district court erred; he contends he provided evidence establishing a genuine dispute as to whether he can make out a prima facie case of discrimination, and that he also offered sufficient direct or circumstantial evidence to prove his age was the but-for cause of his termination. Therefore, we must evaluate the evidence on both grounds.

1.

Prima Facie Case

a.

An ADEA plaintiff may establish a presumption of discrimination by making out a prima facie case of age discrimination according to McDonnell Douglas Corp. v. Green and its descendants. See 411 U.S. 792, 802 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 142-43 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Though "the plaintiff's burden is not onerous," he must nevertheless prove his prima facie case by a preponderance of the evidence. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515 (4th Cir. 2006) (internal quotation marks omitted). To establish a prima facie case, the plaintiff must show (1) he was a member of the protected class, namely, "individuals who are at

13

least 40 years of age," 29 U.S.C. § 631(a); (2) he was performing his job duties to his employer's legitimate expectations at the time of termination; (3) he was terminated; and (4) he was replaced by a substantially younger individual. Hill, 354 F.3d at 285. Appellant cannot get beyond step two.[4]

Whether an employee met his employer's legitimate expectations at the time of termination depends on the "perception of the decision maker . . . , not the self-assessment of the plaintiff," and not the opinions of the plaintiff's coworkers. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). And because it is the plaintiff's burden to persuade the trier of fact that he met his employer's legitimate subjective employment expectations, at the prima facie stage we must consider the employer's "evidence that the employee was not meeting those expectations." Warch, 435 F.3d at 515-16. Otherwise, it would be "difficult to imagine a case where an employee could not satisfy the . . . legitimate

---

[4] Because Appellant has failed to make out a McDonnell Douglas prima facie case, we do not opine on whether Appellant could have satisfied the ultimate burden of proof applicable to his pretext case: that his age was the but-for cause of his termination. See Reeves, 530 U.S. at 142-43 (explaining that the core issue of "discrimination vel non" in an ADEA pretext case is not reached unless the employee proves a prima facie case and the employer meets its burden to produce "legitimate, nondiscriminatory reason[s]" for the adverse employment action (internal quotation marks omitted)).

expectation element." Id. at 516 (internal quotation marks omitted).

b.

The district court found Appellant failed to create a genuine dispute about whether he satisfied the legitimate expectations of his employer at the time of termination for two reasons. First, Appellant's work performance generated numerous customer complaints long before he was terminated. Second, nearer to his termination, Appellee's largest customer refused Appellant's services. Both of these reasons support the district court's decision to grant summary judgment to Appellee.

To attempt to show he fulfilled his employer's legitimate expectations, Appellant highlights the fact that Appellee, despite its claims regarding Appellant's performance record, did not formally discipline him during the six years prior to his termination and did not reassign him to a less economically important route. In fact, Appellee took no formal action against Appellant until approximately four months after it received the Smith Memorandum. However, Appellant's evidence as to his work performance is "simply not enough to genuinely dispute the considerable evidence of [Appellant's] repeated failures and negative performance." Warch, 435 F.3d at 518. Compared to the mountain of evidence demonstrating Appellant consistently failed to meet Appellee's expectations, Appellant's

15

evidence is a mere a molehill; it is either very weakly probative, or not probative at all, of the material issue.[5] Indeed, the evidence of Appellant's lacking job performance "is so one-sided" that as a matter of law he cannot establish a prima facie case. Garofolo v. Donald Heslep Assocs., Inc., 405 F.3d 194, 199 (4th Cir. 2005) (internal quotation marks omitted). Although Appellee did not formally discipline Appellant in writing, this carries little weight because Appellant admitted he was informally counselled about his performance on several occasions over several years. Furthermore, one of Appellee's largest customers, the School Division, devoted an in-service meeting to airing its complaints about Appellant's performance. The School Division also threatened to terminate its contract with Appellee because of these complaints. Of note, Appellant does not dispute that this meeting occurred, or that the School Division threatened to terminate its contract because of him.

Taking Appellant's allegations as true, the fact that Reynolds stated he did not want to fire Appellant before he received the Smith Memorandum, and that Appellant was permitted to keep his route as long as he did despite numerous complaints

---

[5] Appellant has never claimed that his employer's expectations were illegitimate, and we therefore deem this point conceded.

about his performance, does not help Appellant's case. Nor does the bare fact that Appellant was not formally disciplined for generating these complaints. Where there is evidence an employee has repeatedly failed to meet his employer's expectations, and yet the employer has refrained from taking certain disciplinary actions, the absence of discipline is weakly probative of adequate performance. See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980) (concluding "the fact [employee] was kept on for many months after it was determined that he could not perform at an acceptable level of competence . . . shows a high degree of patience and consideration" on the employer's part, not that the employee was performing adequately). Furthermore, Appellant's interpretation of the law is actually against his own interest and the interests of others similarly situated; he is suggesting that in order for an employer to be free of potential ADEA claims, it should terminate an employee at the first sign of poor performance, else a court will find the employee met his employer's legitimate expectations. This view is not only unsupportable as a matter of law, it is also bad policy.

Appellant's evidence is simply insufficient for a reasonable jury to find that Appellant met his employer's legitimate employment expectations. Therefore, we affirm the district court's order of summary judgment as to Appellant's

17

inability to prevail on his ADEA claim by proving a prima facie case of age discrimination.

## 2.

### Direct or Circumstantial Evidence

#### a.

##### i.

We now turn to the question of whether Appellant has established a genuine dispute of material fact as to his ability to prove with direct or circumstantial evidence that Appellee terminated him because of his age. We conclude that Appellant cannot meet this burden, and therefore affirm the district court's order of summary judgment, because Appellant has not proffered evidence tending to show that there was no other explainable basis for Appellee's decision to fire him.

Derogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue. See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010) (noting that "in the absence of a clear nexus [between an employer's derogatory comments and] the employment decision in question, the materiality of stray or isolated remarks is substantially reduced"); Hill, 354 F.3d at 288-89 (requiring that ADEA plaintiffs prove the person acting

18

pursuant to discriminatory animus was "the one principally responsible for, or the actual decisionmaker behind, the action" (internal quotation marks omitted)); Dockins v. Benchmark Commc'ns, 176 F.3d 745, 751 (4th Cir. 1999) (finding ADEA plaintiff met burden to "present affirmative evidence of age-based animus" by offering "his testimony regarding the comments relating to his age" made by decisionmaker for employer (internal quotation marks omitted)).[6]

We have not expressly adopted an analytical framework for determining if derogatory comments are direct evidence of actionable age discrimination, but the Fifth Circuit has created a four-part test for this purpose. See Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010). Comments must be "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Id. This test is consistent with our precedent, and we are content to adopt it here.

---

[6] See also McCray v. Pee Dee Reg'l Transp. Auth., 263 F. App'x 301, 306 (4th Cir. 2008) ("While isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action.").

As for circumstantial evidence of intentional discrimination, the Supreme Court has concluded that an employer's false explanation about the circumstances of the plaintiff's termination, accompanied by evidence that the employer acted with an illicit motive, may circumstantially prove discriminatory intent. See Reeves, 530 U.S. at 147 (discussing the probative value of evidence that an employer's stated reason is pretext).

ii.

ADEA plaintiffs face a high causation burden: in order to prevail, an ADEA plaintiff must prove that discrimination was "the but-for cause" of the adverse employment action.[7] Gross, 129 S. Ct. at 2351 (emphasis supplied) (internal quotation marks omitted). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action because of age is that age was the reason that the employer decided to act." Id. at 2350

---

[7] This burden differs greatly from that applied to so-called mixed-motive claims pursuant to Title VII, which allow a plaintiff to avoid summary judgment "when [the] employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations." Gross, 557 U.S. at 171; see 42 U.S.C. § 2000e-2(m); see, e.g., Pitrolo v. Cnty. of Buncombe, N.C., No. 12-2375, 2014 WL 5315362, at *6 (4th Cir. Oct. 20, 2014) (holding that plaintiffs who prevail on mixed-motive Title VII claims are entitled to seek declaratory relief).

(emphasis supplied) (internal quotation marks omitted). According to Gross v. FBL Financial Services, to show "a but-for causal relationship" for ADEA purposes the plaintiff must present evidence that discriminatory animus was a "necessary logical condition" for the adverse employment action and that the employer did not act "because" of other legitimate motivations for the action. Id. (internal quotation marks omitted).

We agree with the majority of circuits that have considered the issue and concluded that Gross elevated the burden of proof many courts applied to ADEA claims. See, e.g., Leal v. McHugh, 731 F.3d 405, 411 (5th Cir. 2013) (noting "the 'but-for' standard of proof [developed in Gross] is more demanding than the 'motivating factor' standard of proof" applied to Title VII cases); Sims v. MVM, Inc., 704 F.3d 1327, 1336 (11th Cir. 2013) ("[T]he ADEA requires more than what must ordinarily be proven under an analogous Title VII . . . action."). But cf. Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1277-78 (10th Cir. 2010) (recalling that the "Tenth Circuit has long held that a plaintiff must prove but-for causation" to prevail on an ADEA claim, and concluding that "Gross does not disturb [this] precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action").

21

But, pursuant to Gross, for an event to be the "but-for cause," it need not be the sole cause of the adverse employment action. See Leal, 731 F.3d at 415 (concluding "the district court misread Gross, since but-for cause does not mean sole cause" (internal quotation marks omitted)). Age discrimination cases often present more than one reason for an employer to take adverse action against an employee, but an employee need not refute each negative mark on his record or every possible legitimate ground for the employment decision to avoid summary judgment. Rather, according to Gross, to prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondisciminatory grounds did not animate the employer to take the adverse employment action. See Gross, 129 S. Ct. at 2350 (indicating that an employer acts "because of" age when "the employee's protected trait actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome" (emphasis omitted) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).[8] In other

---

[8] We join at least five circuits that have adopted this view of Gross. See Scheick v. Tecumseh, 766 F.3d 523, 532 (6th Cir. 2014) (holding that "notwithstanding the evidence of dissatisfaction with [Appellant's job] performance and the concurrent need to respond to the budget crisis" a reasonable juror could find that Appellant's "age was the but-for cause of [his employer's] decision not to renew the contract for his (Continued)

22

words, if there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show these factors were not "the reason" for the employer's decision.[9] Id. at 176 (internal quotation marks omitted). So "direct evidence of age discrimination[, such as derogatory comments alone,] may not always be sufficient to create a question of fact for trial in the ADEA context." Scheick, 766 F.3d at 532. When evaluating cases like this on summary judgment, our focus

services"); Leal, 731 F.3d at 414 (concluding that a "but-for cause" for ADEA purposes is one "without which the event could not have occurred," and that even despite employer's proffer of multiple alleged bases for the adverse employment action, Appellant adequately pleaded but-for causation (internal quotations marks omitted)); Sims, 704 F.3d at 1332; Shelly v. Green, 666 F.3d 599, 622 (9th Cir. 2012) (affirming order of summary judgment on ADEA claim because, in light of Gross, Appellant's evidence could not "show that the [employer's] decision is unexplainable on any basis other than age discrimination"); Jones, 617 F.3d at 1277-78 ("[A]n employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." (internal quotation marks omitted)).

[9] Appellant argues he only need prove "'that age was [a] "but for" cause of the employer's adverse decision,'" because in its recent discussion of Gross, the Supreme Court "submitted a bracketed '[a]' for the word 'the' preceding the expression 'but for cause.'" Appellant's Br. 48 (alteration in original) (quoting Burrage v. United States, 134 S. Ct. 881, 889 (2014)). Burrage v. United States had nothing to do with the ADEA. That case interpreted the term "results from" as it appears in the Controlled Substances Act. See Burrage, 134 S. Ct. at 885. Although we are unsure how to regard the Supreme Court's alteration of this excerpt from Gross, we suspect that if the Court desired to make a radical change to recent precedent, it would not do so quietly in a case having nothing to do with employment discrimination.

23

is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision.

b.

Here, the district court concluded that Reynolds's comments, as alleged by Appellant, "do appear to be reflecting a discriminatory attitude, and . . . appear to bear on the decision to terminate [Appellant]." Arthur v. Pet Dairy, No. 6:11-cv-00042, 2013 WL 6073465, at *3 (W.D. Va. Nov. 19, 2013). The district court nonetheless held that Appellant's direct and circumstantial evidence could not save his claim from summary judgment because Reynolds's disparaging comments "were not made contemporaneous to the adverse employment action." Id. This is incorrect. In his deposition, Appellant stated that around Thanksgiving in November 2009, Reynolds repeated his view that Appellant was "too old to do [his] job" and "need[ed] to go ahead and hang it up . . . ." J.A. at 983-84. Appellant's coworker, Judith Hickman also corroborated his claim that Reynolds had made ageist comments of this sort in the past.[10]

---

[10] The district court dismissed Hickman's testimony as a coworker's opinion "'as to the quality of plaintiff's work [that is] . . . close to irrelevant.'" J.A. 1098 (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)). The district court misapplied this case. In DeJarnette v. Corning, (Continued)

24

Appellant offers garden variety direct evidence of age discrimination that sufficiently ties Reynolds's alleged discriminatory intent to the relevant time period.

Although we depart from the district court on this point, we nonetheless affirm its conclusion because Appellant does not contest record evidence demonstrating that his employer terminated him for other lawful reasons. Appellee argues it terminated Appellant because he had a long history of performance issues and because its largest customer threatened to leave unless Appellant was removed from the route. Indeed, the record demonstrates Appellee believed the School Division would "pull . . . the contract if [Appellant] continued to be their service person representing [Appellee]." J.A. 560. While "the perception of the decisionmaker" is the relevant issue in determining whether an employee was terminated for lawful reasons other than age, the Smith Memorandum and Appellee's reaction to it are powerful evidence that Appellee had a

---

Inc., the appellant attempted to show her employer's reasons for terminating her were pretext by offering her coworkers' testimony that she "was an average or good employee." DeJarnette, 133 F.3d at 299. We rejected the coworkers' opinions about DeJarnette's performance, because "it is the perception of the decision maker which is relevant." Id. (internal quotation marks omitted). But Hickman's testimony is indeed relevant because it corroborates Appellant's claim that Reynolds made derogatory statements about his age.

25

legitimate motive in terminating Appellant. Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007).

Further, even assuming that Reynolds's alleged attempt to cover his role in Appellant's termination by denying he procured the Smith Memorandum is circumstantial evidence of discriminatory intent, see Reeves, 530 U.S. at 147, Appellee still must prevail as a matter of law. Faced with Appellee's evidence, Appellant offered nothing to show that the Smith Memorandum, and his past work performance issues, did not independently form an animating reason for Appellee's decision to terminate him. Indeed, Appellant admitted that he was criticized both verbally and in writing on numerous occasions over his seven-year tenure at Pet Dairy because of his substandard performance. Consequently, viewing the evidence in a light most favorable to Appellant, the evidence at best demonstrates that his "age was simply a motivating factor" in Appellee's decision, not "the but-for cause" of Appellant's termination. Gross, 129 S. Ct. at 2349, 2351.

Appellant also provides us with another reason to affirm summary judgment in this case: he testified that Appellee had another legitimate business reason to terminate him. According to Appellant, upper management instructed Reynolds to increase the sales of three other sales routes, and "[t]here was no other way he could do that" but to eliminate his position and

26

distribute his route among others. J.A. 417. He also admitted that this business decision was "one of the reasons why" Appellee terminated him, although he insists it was not the "primary reason." Id. at 981, 982. But whether a legitimate business decision was the "primary" reason for his termination is not material; Appellant's burden is to show his age was the but-for cause of the adverse employment action -- a necessary logical condition for his termination. See Gross, 192 S. Ct. at 2351. And here, Appellant's own testimony demonstrates his employer had other legitimate business motives to terminate him.

Therefore, viewing the evidence in a light most favorable to Appellant, we hold that no reasonable jury could find that Appellant has offered sufficient direct or circumstantial evidence that his age was the but-for cause of this adverse employment action.

### III.

For the foregoing reasons, the district court's order of summary judgment is

AFFIRMED.

27