**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1132**

SINAN RAYYAN,

              Plaintiff - Appellant,

       v.

VIRGINIA DEPARTMENT OF TRANSPORTATION,

              Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:15-cv-01681-CMH-JFA)

Argued:  December 6, 2017                         Decided:  February 13, 2018

Before MOTZ, AGEE, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Dirk Harris McClanahan, MCCLANAHAN POWERS, PLLC, Vienna, Virginia, for Appellant.  Liza Shawn Simmons, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Zachary C. Miller, MCCLANAHAN POWERS, PLLC, Vienna, Virginia, for Appellant.  Mark R. Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following his termination, Sinan Rayyan filed a civil action against his former employer, the Virginia Department of Transportation (VDOT). Rayyan alleged racial and religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3 (Title VII), and alleged racial discrimination in violation of 42 U.S.C. § 1981 et seq. The district court granted summary judgment in favor of VDOT on the Title VII claims and dismissed the § 1981 claim. Rayyan appeals the district court's grant of summary judgment, arguing that the district court failed to consider the evidence in the light most favorable to him and that he provided evidence sufficient to support each of his claims.

We affirm, concluding that Rayyan did not provide sufficient evidence to support a direct racial or religious discrimination claim or to make a prima facie showing of racial or religious discrimination. We also hold that Rayyan did not present sufficient evidence to establish a prima facie case of retaliation.

I.

Rayyan is a Muslim Arab-American man. He is a licensed professional engineer formerly employed by VDOT, where he initially held the position of Engineer Senior Project Manager. He eventually received the title of Engineer Senior Supervisor Project Manager and began supervising two other employees.

Rayyan began his employment with VDOT in January 2012 under the supervision of Kevin Northridge, a white male. Northridge reported to Michelle Shropshire, a white

2

female. Northridge resigned from VDOT in December 2013. From December 2013 until Rayyan's termination in January 2014, Rayyan was directly supervised by Shropshire.

During their first year of employment with VDOT, employees are on probationary status and receive quarterly probationary progress reviews. After completing their probationary year, employees receive annual performance reviews. Reviewers can assign one of three ratings: below contributor, contributor, or extraordinary contributor. VDOT only permits the termination of an employee if the employee receives a "below contributor" rating on a performance evaluation and another "below contributor" rating on the mandatory re-evaluation conducted three months after the first "below contributor" rating. To receive a "below contributor" rating, an employee must have received at least one written notice of a performance issue within the review cycle.

Rayyan received "contributor" ratings on his probationary progress reviews in 2012, all of which were authored by Northridge and reviewed by Shropshire. However, the reviews identified areas in need of improvement, flagging concerns such as "several projects have slipped beyond proposed . . . dates," J.A. 230, the need to improve attention to detail, and the need to improve understanding of VDOT protocols.

In 2013, Rayyan received a series of reprimands from Northridge for his workplace performance. In March, Rayyan received a "Notice of Improvement Needed/Substandard Performance" regarding his continued "struggle with basic understanding of Department processes," time management issues, and lack of quality control. J.A. 239. In April, Northridge issued Rayyan a counseling memo reprimanding him for failing to prioritize projects as directed and for keeping inaccurate meeting

3

minutes. Northridge issued another written counseling memo in June after Rayyan took a document signed by Shropshire, altered it, and reused the signature page without her knowledge or approval. Northridge issued a final memo in August regarding Rayyan's failure to accurately communicate deadline information to team members.

In October 2013, Rayyan received a "below contributor" rating on his annual performance evaluation, authored by Northridge and reviewed by Shropshire. Pursuant to VDOT policy, this rating placed Rayyan on a 90-day performance improvement plan. Rayyan filed a grievance contesting his "below contributor" rating, and alleged that he was a victim of "Discrimination or Retaliation by Immediate Supervisor," though he did not further specify to whom he was referring. J.A. 267. The VDOT Civil Rights Division investigated the grievance, and closed its review approximately three weeks later due to insufficient evidence supporting Rayyan's claim.

In January 2014, Shropshire, now Rayyan's direct supervisor due to Northridge's resignation, completed Rayyan's performance re-evaluation and again ranked Rayyan as "below contributor." Rayyan was subsequently terminated pursuant to VDOT policy. *See* J.A. 475 ("If the employee receives a re-evaluation rating of 'Below Contributor,' the supervisor shall demote, reassign, or terminate the employee").

Following his termination, Rayyan brought this civil action against VDOT in federal court, alleging racial and religious discrimination and retaliation in violation of Title VII, and racial discrimination in violation of 42 U.S.C. § 1981. Specifically, he claimed that his dismissal was the result of Shropshire's racial and religious animus and in retaliation for filing the grievance.

4

To support his claims, Rayyan presented testimony of comments Shropshire had made. Daniel Harrison, one of Rayyan's former supervisees, stated that Shropshire had made repeated comments that Rayyan was " 'dumb' or 'stupid' while referring to the fact that [Rayyan] was 'Arab' and from the 'middle east.' " Appellant Br. 7. Harrison further testified that several weeks prior to Rayyan's termination, Shropshire told Harrison that she "didn't want [Rayyan] around long." J.A. 351–52. Rayyan testified that Shropshire told him, "I don't care where you come from. This behavior may be okay in your country . . . but this is not how it's done here in America." J.A. 412–13. Northridge also testified to overhearing this comment. Additionally, Rayyan testified that Shropshire instructed Harrison, who had been tasked with helping train Rayyan on VDOT protocols, to limit how much Harrison showed Rayyan during that training, that Shropshire limited Northridge's ability to balance Rayyan's heavy workload, and that Shropshire forced Northridge to change Rayyan's October 2013 performance review rating from "contributor" to "below contributor."

VDOT moved for summary judgment on all claims. The district court granted VDOT's summary judgment motion as to the Title VII claims, determining that Rayyan failed to produce evidence of discrimination or retaliation. Specifically, the district court ruled that Rayyan did not present direct evidence of racial or religious discrimination, that he did not make a prima facie case of racial or religious discrimination, and that Rayyan could not demonstrate that VDOT retaliated against him because Rayyan could not show a causal connection between a protected activity and his subsequent termination. The district court also dismissed Rayyan's 42 U.S.C. § 1981 claim because

5

the exclusive remedy for such a claim is a 42 U.S.C. § 1983 suit against a person, and Rayyan filed this suit against VDOT—a state actor.

Rayyan timely filed this appeal as to the district court's grant of summary judgment, arguing that the district court failed to consider the evidence in the light most favorable to him and that he provided evidence sufficient to support all of his Title VII claims. Rayyan did not appeal the dismissal of his 42 U.S.C. § 1981 claim.

## II.

We review the district court's "grant of summary judgment de novo, viewing the facts and the reasonable inferences . . . in the light most favorable to the nonmoving party." *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011). Summary judgment is appropriate when the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## III.

We first address Rayyan's racial discrimination claim. A plaintiff can establish a Title VII racial discrimination claim one of two ways. A claim can be established "by

demonstrating through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007). Alternatively, an employee can establish a claim by first "establishing a prima facie case of discrimination," and then "demonstrate[ing] that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* at 214 (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

## A.

To overcome summary judgment based upon direct or indirect evidence of discrimination, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). The evidence must directly reflect the alleged discriminatory attitude and "bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101–02 (2003). Put differently, the plaintiff "must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999), *abrogated on other grounds by Desert Palace*, 539 U.S. at 101–02. Although derogatory statements can constitute direct evidence of

7

discrimination, a stray or isolated remark is not sufficient, and "[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." *Id.* (alteration in original) (quoting *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir. 1991)). Similarly, the discriminatory comments cannot be remote in time from the adverse action. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994).

Rayyan argues that he presented sufficient direct evidence of Shropshire's discriminatory comments and behavior for his racial discrimination claim to survive summary judgment. We disagree. The derogatory statements presented by Rayyan were stray remarks and lack a nexus connecting them to his dismissal.

Rayyan identifies two sets of remarks by Shropshire which he believes indicate racial discrimination. First, that "Harrison . . . testified that Shropshire made repeated comments to him that Rayyan was 'dumb' or 'stupid' while referring to the fact he was 'Arab' and from the 'middle east.' " Appellant Br. 7 (quoting J.A. 355). Second, that Shropshire said, "I don't care where you come from. This behavior may be okay in your country . . . but this is not how it's done here in America." J.A. 412–13, 415.

There is some dispute as to whether Rayyan accurately characterizes Harrison's testimony.[*] Nonetheless, even if this Court assumes that Shropshire called Rayyan a

---

[*] The dispute, it seems, stems from Rayyan's habit of straying from the actual language of the deposition record in its briefs. For example, Rayyan claims that "Shropshire stated to co-workers that '[Rayyan] *won't* be around long . . . .' ". Appellant Br. 4 (alteration in original) (emphasis added). Harrison actually testified that Shropshire "made the comment that . . . she didn't *want* [Rayyan] around long." J.A. at 351 (Continued)

"dumb" or "stupid" "Arab" and made that comment contemporaneous to her remark that "she didn't want him around long," J.A. 351—as we are required to do when reviewing a motion for summary judgment—Rayyan did not present enough direct evidence of discrimination to survive summary judgment. Critically, Rayyan failed to illustrate a nexus between Shropshire's racial remarks and his dismissal. *Brinkley*, 180 F.3d at 608; *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996) ("Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace."). Rayyan argues that the comment satisfies the nexus requirement because it was made three weeks prior to his dismissal. However, the record belies any connection between the remarks and his dismissal. Conversely, the record demonstrates a strong connection between Rayyan's performance and his dismissal. For example, Rayyan was having significant difficulty adjusting to VDOT policies and procedures—in the year preceding Shropshire's alleged comments, Rayyan had received four different reprimands for failing to meet workplace expectations.

Moreover, by the time of Shropshire's alleged comments, Rayyan had already received a "below contributor" evaluation based on those performance issues. This "below contributor" evaluation placed Rayyan on probationary status pending re-evaluation and in peril of demotion, reassignment, or dismissal. Accordingly, it is difficult to see how Shropshire's racially tinged remarks had a direct bearing on Rayyan's

---

(emphasis added). When the success of Rayyan's claims depends on providing *direct* evidence of Shropshire's discriminatory attitude, these discrepancies are significant.

termination. *See Brinkley*, 180 F.3d at 608 (holding that "[t]he evidence contained in the record . . . belied [plaintiff]'s claims that the Board's attitude was related to her sex" when it indicated plaintiff was not working well with co-workers and her dismissal was an effort to avoid further workplace issues).

Rayyan's allegation that Shropshire commented "I don't care where you come from . . . this is not how it's done here in America" is similarly insufficient to demonstrate that race was a motivating factor in his termination. As with Shropshire's comments that he was a "dumb" "Arab," Rayyan again fails to provide evidence of how the remark "bear[s] directly on the contested employment decision," especially given the timing of the comment. *Fuller*, 67 F.3d at 1142. The alleged comments occurred in April or May 2012 and again in August 2013, and Rayyan was terminated six months after the latter comment, in January 2014. Given the isolated nature of Shropshire's alleged statements and the lapse in time between the comments and Rayyan's dismissal, these statements are not direct evidence of discrimination, either.

To overcome a summary judgment motion based upon direct evidence of discrimination, Title VII requires a plaintiff to produce evidence of a stated purpose to discriminate and a nexus between that evidence and plaintiff's termination. Here, at best, Rayyan provided evidence of two distasteful comments. Thus, Rayyan has failed to demonstrate through direct or circumstantial evidence that his race was a motivating factor in his dismissal from VDOT, and his claim is consequently insufficient to evade summary judgment on this ground.

10

B.

Rayyan also argues that his Title VII racial discrimination claim should have survived summary judgment because he sufficiently established a prima facie case of racial discrimination. A plaintiff can establish a prima facie showing of discrimination by demonstrating by a preponderance of the evidence: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff presents a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action, even though the burden of persuasion remains with the plaintiff. *See Hill*, 354 F.3d at 285; *Holland*, 487 F.3d at 214. If the employer meets its burden, the burden shifts back to the plaintiff to prove by a preponderance that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." *See Hill*, 354 F.3d at 285 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

In this case, only the second and fourth elements of Rayyan's prima facie showing are in dispute. On the second element—satisfactory job performance—Rayyan claims there were only two VDOT metrics for assessing performance: whether projects were on time and on budget. Rayyan argues that because Northridge assessed him as a "contributor" until October 2013, Rayyan was doing his job satisfactorily. VDOT responds that Rayyan was not performing his job satisfactorily. The agency highlights

11

that although Rayyan received a "contributor" rating on his evaluations during his first probationary year, each evaluation listed deficiencies Rayyan needed to address. After that year, VDOT notes that Rayyan received a formal notice that he needed to improve, three separate negative counseling memos, and two evaluations rating him "below contributor"—the lowest possible rating. VDOT also presented evidence, in the form of a sworn declaration by Shropshire, that even if its sole measure of performance was whether projects were on time and on budget, not all of Rayyan's projects were on time or on budget.

The record does not support Rayyan's contention that he was performing his job satisfactorily. Even taken in the light most favorable to him, the multiple counseling memos, repeated admonitions regarding time management, and comments about Rayyan's failure to learn VDOT processes indicate that his performance was not satisfactory. Rayyan argues that the reprimands were the result of Shropshire's negativity towards him and her efforts to undermine his performance by denying him training and ensuring he had a heavy workload. However, several of the incidents for which Rayyan was reprimanded, such as Rayyan's use of Shropshire's signature without consent and failure to accurately communicate program deadlines, cannot be connected to Shropshire's alleged efforts to limit his training or increase his workload.

Rayyan attempts to minimize his reprimands and negative performance reviews by arguing that, although they were authored by Northridge, Shropshire influenced Northridge. For example, Rayyan contends that Shropshire forced Northridge to write the March 2013 reprimand and to change Rayyan's October 2013 performance review

12

from "contributor" to "below contributor." This argument is unpersuasive. The record indicates it was standard VDOT practice for Shropshire to review and edit Northridge's employee evaluations and reprimands; this review was not a singling out of Rayyan.

Moreover, the reprimands often memorialized complaints made by employees other than Shropshire and Northridge. For example, Rayyan received a counseling memo in April 2013 noting that two employees believed his "minutes of a critical meeting . . . may not have accurately captured what was said." J.A. 241. Reports of Rayyan's poor performance were also corroborated by Shropshire's supervisor, Quintin Elliott. Elliott testified that he felt Rayyan lacked knowledge about his projects, was unable to effectively answer questions, and that he instructed Northridge and Shropshire to address Rayyan's performance issues.

Hence, Rayyan has not shown by a preponderance of the evidence that he was performing his job satisfactorily, and he therefore cannot establish a prima facie showing of discrimination. Because Rayyan cannot satisfy the second element of his prima facie case, we decline to address his argument regarding the fourth element. Similarly, Rayyan's failure to establish a prima facie case of discrimination makes it unnecessary for us to consider whether VDOT's proffered reason for his termination was pretext.

Accordingly, we hold that the district court did not err in granting VDOT's motion for summary judgment on Rayyan's Title VII racial discrimination claims.

13

IV.

We now turn to Rayyan's religious discrimination claim. As an initial matter, VDOT contends that Rayyan did not directly argue this claim on appeal, and thus that this claim is waived. *See* Fed. R. App. P. 28. We disagree. The appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies" or the claim is abandoned. Fed. R. App. P. 28(a)(8); *EEOC v. Md. Ins. Admin.*, No. 16–2408, 2018 WL 298145, at \*6 n.10 (4th Cir. Jan. 5, 2018); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999). Here, in his brief, Rayyan repeatedly references his religious discrimination claim and the authorities on which the claim relies. *See e.g.*, Appellant Br. 29 ("the evidence presented in this case shows that Plaintiff was terminated as a result of his race *and religion*" (emphasis added)); *id.* at 16 (citing *Odom v. Int'l Paper Co.*, 652 F. Supp. 2d 671, 682 (E.D. Va. 2009), *aff'd*, 381 F. App'x 246 (4th Cir. 2010), for the proposition that "a plaintiff may establish a claim of discrimination by demonstrating . . . that race *or religion* was a motivating factor in the employer's adverse employment action" (emphasis added)). Hence, Rayyan did not waive his religious discrimination claim.

Having determined that this claim is reviewable, we turn to the merits. A plaintiff can bring religious discrimination cases under two separate theories—disparate treatment or failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). Rayyan alleges that VDOT discriminated under the disparate treatment theory. Under that theory, "an employee must demonstrate that the employer treated her

14

differently than other employees because of her religious *beliefs*." *Id.* (emphasis original). The plaintiff can meet his burden at the summary judgment stage by proving his job performance was satisfactory and by either providing direct or indirect evidence of discrimination or by using "a burden-shifting scheme similar to the one the Supreme Court articulated in *McDonnell Douglas Corp. v. Green* . . . to develop an inferential case." *Id.* (citation omitted). As discussed above, Rayyan failed to establish that his job performance was satisfactory, and therefore his Title VII religious discrimination claim cannot succeed. *See id.*

Accordingly, the district court did not err in granting VDOT's motion for summary judgment on this claim.

V.

Last, we turn to Rayyan's challenge to the district court's conclusion that he did not present evidence sufficient to establish a prima facie case of retaliation.

In order to establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that the defendant took the adverse action because of the protected activity. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001). Protected activities include opposing discriminatory practices and making Title VII claims. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Rayyan lodged a formal grievance with VDOT in the wake of his October 2013 "below contributor" evaluation, alleging discrimination. On the grievance form, he checked a box indicating that he had decided not to present his grievance to his immediate supervisor because of "Discrimination or Retaliation by Immediate Supervisor." J.A. 267. The district court determined that this grievance was not a protected action because Rayyan did not name Shropshire, but instead vaguely alleged discrimination by his immediate supervisor, who was at that time Northridge.

Even assuming the district court erred in determining that Rayyan's informal grievance was not a protected action, however, Rayyan failed to state a claim for retaliation because he did not present adequate evidence that his protected activity was the but-for cause of his termination. *Nassar*, 133 S. Ct. at 2528 ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). Rayyan filed his grievance with VDOT after he had already been placed on probation due to his "below contributor" review and related performance issues. According to VDOT policies, if an employee receives a "below contributor" review and does not improve their rating within three months, then their "supervisor shall demote, reassign, or terminate the employee." J.A. 475. As a result, Rayyan cannot establish that VDOT would not have dismissed him but-for his grievance filing. Thus, the district court did not err in granting VDOT's summary judgment motion on Rayyan's retaliation claim.

16

## VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*